VoORHEES, J.
The case of Hannah Fast against David Umbaugh and others comes into this court by appeal, and- the action is for the assignment of dower in the premi'sies described in plaintiff’s petition and for rents and profits in the same. Her claim is based on the facts substantially as follows:
That on April 6, 1875, one George Fast, who was after-wards plaintiff’s husband, was the owner in fee of said real ■estate described in plaintiff’s petition, and on said date said George Fast -entered into a contract with his son Jonathan Fast, by which he .conveyed said premises to his said son in ■consideration of $6,000.00 and the promise on the part of tlá. son to support his father, the -said George Fast, and his wife, the mother of said Jonathan Fast, during their lives, and to support the survivor in the event of one’s death prior to tho ■other. Said consideration for said contract was- secured by a mortgage on the premises. Said contract of ‘sale was in September, 1879, rescinded and said mortgage released by arrangement’ between the said Jonathan Fast and his father George Fast.
Prior to this the mother of 'said Jonathan Fast had deceased, ■and said George Fast, on December 5, 1877, had intermarried with the plaintiff.
Said Jonathan Fast, on September 30, 1879, without con« sideration, conveyed the said promises, by direction of his father, said George Fast, and without the knowledge or consent of the plaintiff, to the children of said George Fast who are named in the deed of that date.
Said George Fast, on July 4, 1888, died intestate, leaving the plaintiff his surviving widow. The plaintiff, on August 14, 1897 (and this date will becomle material as we proceed further) filed her petition in this action. The defendants, the •children, deny the allegations of the petition as to the alleged fraud, and denied the agreement to reconvey the property by Jonathan to George; and aver that the defendant, David Umbaugh, bought at public sale a .portion of .the premises in a partition proceeding, and he files a separate answer and avers that he now owns and is in possession of all the lands described in plaintiff’s petition and has paid full value therefor. He further claims that he did not know that .plaintiff had made any *411 ■claim whatever to said land before he became the purchaser.. He denies all charges of fraud and conspiracy alleged in he petition.
December 15, 1888, one Ida Swope, one of the children of ■said George Fast, filed her petition for partition in the common pleas court of this county, praying for-partition of the premises in the petition described, making the children and heirs of George Fast, deceased, parties thereto, but the plaintiff herein was not made a party. Such proceedings were had in said action that on July 6, 1889, said premises were sold by the sheriff of this county, at public auction, to the defendant David'Umbaugh for $4,175.00, which sale was upon terms of one-third cash, one-third in ■one year, and one-third in two years. The sale was confirmed and the premises conveyed by the sheriff to said purchaser who is still the owner thereof.
The plaintiffs contention is that she is entitled to dower in .said premises by reason of her marriage with the said George Fast, which occurred on December 5, 1877; that on July 4, 1888, George Fast died leaving the plaintiff- his widow. And on December 15, r888, the same year, said partition .suit was commenced.
It is contended by defendants, that the plaintiff is not entitled to dower, because, during the coverture existing between the plaintiff and George Fast, said George- Fast was not seized of the legal title to said lands, or any part thereof, nor at ■the time of his death did he have any equity in said property.
These two statements of facts raise the material questions that are to be considered, so far as questions of law are concerned: First, whether it was necessary under the circumstances and facts claimed here, that at the time of his death George Fast should have an equity in these premises, in order that the plaintiff would have her rights as to dower.
In examining the evidence in the case we find, as a quesr t'on of fact, that the sale of this property by George Fast to his son Jonathan was a valid sale, and was for a valuable consideration, and was made in good faith; and it passed the legal title of this property to Jonathan Fast. That sale was, hy the consent of the parties, rescinded. The effect of the re *412 scission without a reconveyance would be that George Fast ■¡would be the equitable owner of this property, which he had so conveyed to his son. .There is no controversy as to the fact that this sale was rescinded. The parties had a right to-rescind. Jonathan had a right, if he found he could not carry out the contract, with the consent of the father, to throw up the contract and rescind the transaction and release himself from the obligation that he had entered into with his father with reference to this property. But it must not be lost sight of, that when George Fast released this contract, when he gave up this mortgage that he had, when he released and discharged Jonathan from that contract, he was then attempting, he was. in fact, giving up an equity that he had in this property. He did not have the legal title at that time, but he had the real' value of the property that he had transferred to his son; it was an equity then in him. The naked legal title, which, when the contract was rescinded, remained in Jonathan, was a mere-paper title and practically of no value, because the real value, the equity, was in the father, which had been secured to him by the contract secured by the mortgage, that he had with His. son to keep him during his life time. So, as a question of fact, we find, under the circumstances and the situation, that the legal title to this property was not in said George Fast during the coverture of the plaintiff with him.
That leads us to the consideration of the next question: Was-said George Fast seized of an equitable title? And if he was seized of an equitable title, could he then dispose of that equity, during his life, without the consent or knowledge of his wife, and thereby deprive her of her rights as his widow, in case she survived him? This is the vital question in the case.
The legal title was not reconveyed to George Fast by Jonathan, but by direction of said George it was conveyed to his, George’s children. The mortgage was also released, the contract rescinded, and by direction of his father, said George Fast, Jonathan, who had nothing but the legal title, conveyed the property to the children of said George Fast.
Can a husband, without the knowledge or consent of his wife, voluntarily and without consideration, dispose of his property, even if it be an equity, during coverture, whereby she is de- *413 ' frauded of her. rights as a married woman, in case she survived her husband as his widow? We believe the supreme court of Ohio in a recent case has settled this question.
In the case of Ward et al. v. Ward, 63 Ohio St., 125, the court held, that where a man has entered into a contract of marriage, with a woman, but immediately before the consummation of the contract of marriage, he conveys to his children his property, without consideration, and without the knowledge or consent of the party with whom he has entered into such contract to marry, and then afterwards consummates the marriage, such an act on the part of the husband is a fraud upon her, and a fraud upon her rights as his wife. In that case it is plainly and easily seen, that if he passed the title to his property before the consummation of the contract of marriage, and never again became the owner of the title up to the time of his death, he would not be strictly regarded as the owner of the equity of the property. But that is not material, it is not necessary according to the holding of the supreme court.
The fact that he entered into the marriage relation immediately after making a disposition of his property, without the knowledge of the party with whom he has entered into the contract, is a fraud upon her rights, and she is entitled to dower in his real estate, if she survives him.
We think that case is stronger than this. We believe the doctrine there goes farther, because at the time of the conveyance in that case the relation existing between the parties was that of debtor and creditor, in the event that the contract of marriage' had not been consummated. It is true that where a man enters into the contract of marriage with a woman, 'the .moment he enters into the contract to be performed in the future,in cáse of a.violation of the contract, the relation of debt- or and creditor on a breach of the contract arises between them; she is a creditor in contemplation of law from the date of the contract. But in the case at bar, where there was an agreement between Jonathan and his father, that the contract was to be rescinded, and in compliance with that agreement the contract was rescinded, and the valuable part that had been secured to the father by mortgage had been released, but the legal title to this property was not reconveyed by Jonathan to his fathr, and *414 the father, who was then seized of the equitable title to said property, directs the son Jonathan, who was then paying nothing for said property, to convey the same to the children of said George, the father, without consideration and without the knowledge or consent of the plaintiff in this action, we hold that such a conveyance is a constructive fraud upon the plaintiff, and if she survives her said husband, she would be entitled to her dower interest therein, unless Mr. Umbaugh, who was the purchaser of this property at judicial sale, can hold it as an innocent purchaser, as against her claim of dower.
If Mr. Umbaugh had purchased this property at judicial sale, although he bought it on time, yet, if he received his deed and confirmation of sale, and the whole transaction, as far as he was concerned, had taken place without any knowledge or notice of this equitable claim of dower in the premises by plaintiff, he would hold it as against her.
This raises an important question of fact. Did Mr. Umbaugh, at the time of the purchase of this property, have knowledge, or had he had such information that would put him upon inquiry, which, if he had diligently pursued, he could have ascertained the nature of the claim, or whether there was any claim in fact? We think the testimony shows, and we so find, that before this sale, before Mr. Umbaugh purchased this property,, he did have notice of the claim of the plaintiff; that he had knowledge that there was a contention between her and the heirs of George Fast, whereby she was claiming on her part, that she was entitled to' the rights of a widow in this property, and on the other hand, the children were claiming that she was not so entitled. If knowledge came to him that there was a claim of this character,' and he decides that she has no claim, then he acts at his peril. If sufficient information comes to him to put him on inquiry, he cannot rely upon his rights as a bona fide purchaser. Whenever notice comes to a party, who is entitled to notice, sufficient to put him on inquiry, and he starts to make the inquiry, he must pursue it in all sources in which information can be obtained. Mr. Umbaugh admits that he did come to the county seat, Ashland, and examined the records of the county, seeking for information upon this question. What was the nature *415 of the title that he was inquiring after or- seeking? It was a dower interest unassigned. The contention of the plaintiff was, that she had an interest, as the widow of George Fast, in this property. He comes and makes the investigation above stated, and he finds nothing, and he stops. But he had been informed, and thereby put upon his inquiry, that the plaintiff claimed a dower interest in the property, and if he had pursued the investigation, if he had gone to the plaintiff, the party who was making the claim, as the widow of George Fast, who was then residing on the premises, if he had gone to her and made inquiry, there was the source he could have gotten the information, whether she was in fact making a claim or had any claim or not. That he did not do, so she says. She claims that they did talk; that he was wanting her to sign papers, and the testimony seems to be clear upon the question, that he had knowledge brought home to him, that there was a claim made by her as to her rights in this property.
Mr. Pomeroy states the rule as to notice here invoked as follows: “If, however, it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, if prosecuted with reasonable diligence, would certainly lead to a discovery of the conflicting claim, then the inference that he acquired the information constituting actual notice is necessary and absolute; for this is only another mode of stating that the party was put upon inquiry; that he made the inquiry and arrived at the truth. Finally, if it appears that the party has knowledge or information of such facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make any inquiry, or having begun it fails to prosecute it in a reasonable manner, then, alsd, the inference of actual notice is necessary and absolute.” 2 Pom. Eq. fur., section 597, and authorities cited in note.
We hold, as a question of fact, that Mr. Umbaugh had knowledge of plaintiff’s claim; that he is not an innocent purchaser ; that when he bought this pfoperty he knew that there was this contention on the part of- the pláintiff outstanding, -whereby she was then claiming the rights that she is now asserting and trying to enforce in this action. So he is not an innocent purchaser.
J. W. Albaugh, and Nichols & Boifenmyer, for Plaintiff.
C. P. Winbigler, for Defendants.
We, therefore, find, that the plaintiff is entitled to dower in these premises by reason of the fact that her husband, in directing his son to transfer this property without consideration to his children, and without the knowledge and consent of this plaintiff, perpetrated a fraud upon her rights,' and such a fraud that the court will give her relief by giving her dower in the premises.
Another question here arises, which will be briefly considered. The plaintiff contends that she is entitled to the rents and profits of this property from the death of her husband. The court does not think so. We think that the only period from which she can claim rents and profits will be from the date of the filing of her petition; and this will be the finding of the court. Sections 5711, 5712, 5714, 1515, Revised Statutes of Ohio; Vattier v. Johnson, 1 W. L. J.,393; Stoddard v. Marshall et al., 1 Dis., 529, 530; s. c., 2 W. L. Gaz., 27.
We therefore find and hold, that the plaintiff is entitled to dower in the premises described in the petition; and the commissioners in assigning the dower should ascertain the rental value of the property, commencing from the date of the filing of the petition, and that she would be entitled to one-third thereof, and this will be the decree of the court.

Note. I. W. Albaugh, and Nichols & Boffenmeier, for Plaintiff:
The conveyance by Jonathan to ■ his brothers and sisters was a most consummate fraud upon this plaintiff. If George Fast owned the equitable title in this land at his death, his wife would be entitled to her dower. Sec. 4188, R. S.; 1 Ohio St., 293; 13 Ohio, 601; Ibid. 108; 36 Ohio St., 608. If it could be claimed in this case that the father did not consent to the conveyance by Jonathan to the other heirs,, then clearly the farm belonged to him in equity at the time of his death, and he would have the same equity which he had when Jonathan rescinded the contract for his support. If it should be claimed that he authorized the conveyance to be made to the children, then he and the children consummated a fraud upon his wife. The proof shows conclusively that 'she did not know of the conveyance, or that it was contemplated, until after it was made. Ward v. Ward, 63 Ohio St., 125,
Umbaugh knew of all the facts, knew the claim that Mrs. Fast had or was making. If he bought the land with that knowle-’ge, he *417 bought it burdened with the dower of Mrs. Fast. She was not a party to the proceedings and was not bound by anything that was done in that case. 5 Ohio St., 520, as to notice — release of dower.
C. P. Winbigler for Defendant:
To entitle a widow to dower, it is necessary that her husband should have a legal estate of inheritance in the premises in which dower is claimed, during the coverture, or should have had an equitable interest at the time of his death.' Settlements of Decedent's Estates, 694; Muller v. Wilson, 15 Ohio, 108, 113 & 117; Rands v. Kendle, 15 Ohio, 671; Abot v. Bosworth, 36 Ohio St., 605; 39 Am. Dec., 218, last par.
As to fraud see 10 Am. & Eng. Ency. Law, 203; 1 Woerner on Adm., Sec. 113; 35 Am. Rep., 699.
A widow is not entitled to dower in lands conveyed away by her husband, although such conveyance is fraudulent and void as against his creditors. 4 Cush. (58 Mass.) 138.
The $6000.00 of notes was personalty, and George Fast could have given that away — no dower in this — plaintiff could not have complained had it been given away. Thayer v. Thayer, 39 Am. Dec., note, 219; Firestone v. Firestone, 2 Ohio St., 415. Plaintiff had no legal or moral right to this money — she had not helped to accumulate the same. Butler v. Butler, 30 Am. Rep., 441, 445.
By appointment 1 Scribner on Dower, 295; 1 Woerner Am. Law. of Adm. star page 245.
As to origin of dower, 6 Ohio, 77 & 78.